**In re Anonymous No. 26 D.B. 90**

Disciplinary Board Docket No. 26 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

McGIVERN, *Member,* August 12, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On February 13, 1990, the Office of Disciplinary Counsel filed a petition for discipline against respondent, docketed at No. 26 D.B. 90. The petition stemmed from respondent's alleged mishandling of client funds.

Respondent filed an answer to the petition for discipline on March 30, 1990, at which time he denied the existence of an attorney-client relationship between himself and the complainant and denied any wrongdoing.

In May 1990, the Office of Disciplinary Counsel and respondent entered into a stipulation wherein they agreed that respondent had accepted settlement funds on behalf of the client and subsequently distributed and invested those monies. No agreement was reached concerning the alleged Disciplinary and Professional Conduct Rules violations.

The matter was referred to Hearing Committee [     ], which was chaired by [     ], Esquire, and included [     ], Esquire, and [     ], Esquire. Hearings on the matter were held on May 31, 1990, and September 10, 1990.

On July 12, 1991, Hearing Committee [     ] filed its report and recommendation. Attorneys [     ] and [     ] recommended that respondent be suspended from the practice of law for a period of 18 months, while attorney [     ] suggested that a 12-month period of probation coupled with a public censure would be a more appropriate form of discipline. On August 26, 1991, respondent filed a brief on exceptions to the Hearing Committee report and requested that his actions warranted "no more than a private reprimand."

The Office of Disciplinary Counsel filed a brief opposing respondent's exceptions on September 11, 1991, and suggested that the Disciplinary Board adopt the findings and conclusions of the Hearing Committee.

The matter was adjudicated at the September 27, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We have made the following findings of fact, based upon the evidence presented by both parties.

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [ ], Esquire, was admitted to practice law in the Commonwealth of Pennsylvania in 1965, and his office is located at [ ].

(3) At some point prior to June 1982, [A] met with respondent to discuss pursuing a wrongful death action against the [B] Center of [ ] County, wherein [A's] husband, [C], had died on July 5, 1980.

(a) Respondent referred the matter to attorney [D], of the law firm of [E], with which action [A] agreed.

(b) On June 25, 1982, attorney [D] filed a praecipe for summons in trespass, for the case, captioned "[A], Administratrix of the Estate of [C], deceased, v. [B] Center of [ ] County Inc.," and docketed at no. [ ] of 1982 in the Court of Common Pleas of [ ] County.

(4) On August 18, 1983, attorney [D] filed a petition to settle wrongful death action and provide distribution, which petition was signed by both respondent and attorney [D], as counsel for [A].

(5) Upon consideration of the petition, by order dated August 18, 1983, the court decreed that:

(a) Settlement in the amount of $550,000 was approved;

(b) "Petitioner is hereby authorized to accept payment of $550,000 and to distribute $180,854.70 to herself as the surviving spouse and payor of the funeral and related expenses";

(c) "The petitioner is hereby authorized to accept the sum of $146,738.86 on behalf of the minor child and is further authorized to deposit said sum in a bank, savings and loan association or other financial institution in the name of [C], minor, and [A], his parent and natural guardian, with a notation on the account that 'withdrawal of all or any part of said sum shall not be made prior to [F], having attained the age of 18 years, except by prior order of court'"; and

(d) The following disbursements of the settlement proceeds were to be made:

| AMOUNT | PURPOSE |
| --- | --- |
| $222,406.44 | Attorney's Fees and Costs |
| $ 3,153.00 | [A] as Payor of [C's] Funeral Expenses |
| $ 962.85 | [A] as Payor of [C's] Medical Expenses |
| $ 30,000.00 | [A] (First $30,000) |
| $146,738.85 | [A] (1/2 of balance) |
| $146,738.86 | [F] (1/2 of balance) |

(6) Thereafter, [A] discussed with respondent various options with regard to her handling of the settlement monies. In particular, [A] had expressed concern to respondent about her ability to handle the money, as she was an alcoholic.

(7) By letter dated August 23, 1983, respondent advised [A] that he would "prefer not managing your settlement monies because there will be times that I may not agree

with your wishes as to reasons for spending and your personal problems. In light of your desire to not seek an investment firm to advise you or outside counsel, I will prepare a power of attorney for you to review and execute."

(8) On September 14, 1983, [A] individually and as administratrix of the estate of [C], executed a power of attorney, which had been drafted by respondent and stated the following:

(a) the power of attorney was irrevocable for a period of 25 years;

(b) Respondent was to "receive and recover" rent from tenants occupying [A's] duplex in [    ] County;

(c) Respondent was accorded broad powers of access to the funds of both [A] and [F]; and

(d) Respondent was to be excused from responsibility for services rendered in conjunction with this power and indemnified in any related lawsuits or actions.

(9)(a) [A] signed and initialed the appropriate pages of the power of attorney.

(b) The power of attorney was prepared to enable respondent to manage the [A] funds with the conditions that existed at that time.

(c) One condition was [A's] unusual personal situation that included her own alcoholism and the cocaine addiction of her live-in friend.

(10) On the following dates, respondent received entrusted funds in the amount of $150,000 on behalf of the [A], reflecting partial settlement of the wrongful death suit, which he then deposited into a [G] bank account, captioned "[respondent], escrow account," number [    ]:

| DATE | AMOUNT |
| --- | --- |
| September 8, 1983 | $ 25,000 |
| September 15, 1983 | $100,000 |
| November 1, 1983 | $ 25,000 |

(11) By letter dated October 26, 1983, respondent requested that [A] loan him a portion of the settlement funds so that he could consolidate his own loans. Respondent proposed repayment at a floating interest rate which would be set at 1 percent over the prime rate, and agreed to make payment in full at any time [A] demanded. Respondent suggested that [A] consult with another attorney, bank or investment firm concerning the fairness of the loan.

(12) The note, also dated October 26, 1983, was entitled "Note Subject to Acceleration," and was signed by both respondent and his wife. The loan was not to exceed $200,000; was to be repaid on March 1, 1990, or upon demand; and was to be borrowed at a floating interest of 1 percent above the prime rate calculated on a six-month basis until maturity. As collateral for the loan, respondent and his wife pledged, to [A] individually and as guardian of [F], the equity in their personal residence, one-half ownership of [H] Plaza, which had a net value of $500,000 and "other miscellaneous and future properties."

(13) From the funds respondent received on behalf of the [A] described in paragraph 10, the following disbursements were made:

| DATE(S) | AMOUNT | PURPOSE OF PAYMENT(S) |
|---|---|---|
| 9/13-11/30/83 | $23,853.57 | Paid by respondent on behalf of [A] for debts owed. |
| 9/14-11/10/83 | $32,406.44 | Attorney [D] for attorney fees. |
| 9/9-11/8/83 | $30,000.00 | Respondent for attorney fees. |
| 11/6/83 | $2,000.00 | Loan to [I] and [J] |

(14) In addition, respondent opened the following accounts on behalf of the [A]:

314

(a) On November 30, 1983, two certificates of deposit in the name of the [A] in the combined amount of $45,000.

(b) On November 30, 1983, a [G] bank account in the amount of $3,200, numbered [    ] and captioned "[A] or [F], c/o [respondent]," (hereinafter, [A] account).

(15) Respondent's disbursements of $136,460.01 from September to November 1983 was less than the $150,000 respondent had received on behalf of the [A], thus obligating respondent to hold inviolate the difference, that being $13,539.99. Respondent failed to hold the [A] funds inviolate in that, while respondent was entrusted with the $13,539.99, his escrow account balance fell below that amount. For example:

| DATE | ACCOUNT BALANCE |
|---|---|
| December 20, 1983 | $13,002.20 |
| December 21, 1983 | $12,002.20 |
| December 23, 1983 | $10,882.20 |
| December 28, 1983 | $ 8,882.20 |
| December 29, 1983 | $ 8,538.70 |
| December 30, 1983 | $13,211.70 |
| January 4-31, 1984 | $ 5,211.70 |

(16) Respondent's use of client funds, as described in paragraph 15, was the result of a clerical error, in that check no. 1366 for $1,500 was incorrectly posted on the escrow account records as $15,000, thereby showing that $13,500 was available to respondent as fees.

(17) On December 30, 1983, respondent received $400,000, the balance of the settlement due the [A], and on January 5, 1984, deposited said funds into another [G] bank account, captioned "[respondent], escrow account," numbered [    ] from which the following disbursements were made:

| DATE | AMOUNT | PURPOSE |
| --- | --- | --- |
| 1/04/84 | $ 80,000 | Attorney [D] for attorney's fees. |
| 1/05/84 | $ 80,000 | Respondent as attorney's fees. |
| 1/13/84 | $ 200 | [A] as advance on settlement. |
| 1/20/84 | $ 2,000 | [A], guardian for [F] for living expenses. |
| 1/23/84 | $237,800 | Deposit into the [A] account. |

(18) Contrary to the court's direction in its order of August 18, 1983, respondent failed to place a notation on the account stating that the withdrawal of any funds was not to be made from the account prior to [F] attaining the age of 18, except by court order, and/or failed to open a separate account with such a restriction for the funds of [F], totaling $146,738.86.

(19) Pursuant to the note of October 26, 1983, described in paragraph 12, on October 12, 1984, respondent withdrew $150,000 from the [A] account. The check, numbered 104, was made payable to himself and was annotated "loan to [respondent]."

(20) Other disbursements from the [A] account included loans to various individuals and companies, including:

(a) $2,000 to [I] and [J] on or about November 6, 1983, for which [I] and [J] executed a note in that amount.

(b) $2,600 to [K], individually and as president of [L] Inc., on October 28, 1984, for which [K] executed a demand note with payment due on October 28, 1989, or on demand by [A].

(c) A total of $25,000 to [M] Inc., on April 25 and May 2, 1985. The appropriate financial statements, Form

316

UCC-1, was filed in the Prothonotary's Office, [    ] County and with the Department of State.

(d) $600,00 to [N] on July 1, 1987, for which [N] executed a note. [A] approved this loan to [N].

(21) Between March 1984 and May 1988:

(a) Respondent made disbursements from the [A] account in the approximate amount of $169,757.40, either to or on behalf of [A].

(22) In addition, the following disbursements were made to [F], without a court order directing same:

| Date | Amount |
|---|---|
| October 13, 1986 | $ 300 |
| October 27, 1986 | $ 100 |
| October 27, 1987 | $ 400 |
| February 13, 1987 | $ 400 |
| TOTAL | $1,200 |

(23) Between November 5, 1984, and May 23, 1988, respondent caused to be deposited $58,973.30 into the [A] account. These deposits, which were to be partial repayments on the loan were made on the following dates:

| DATE | AMOUNT | ACCOUNT BALANCE (prior to deposit) |
|---|---|---|
| 11/05/84 | $ 913.93 | $80,933.09 |
| 12/03/84 | $ 913.93 | $80,372.02 |
| 12/21/84 | $ 1,000.00 | $79,048.82 |
| 12/31/84 | $ 875.68 | $80,048.82 |
| 1/31/85 | $ 875.68 | $81,399.69 |
| 3/04/85 | $ 875.68 | $80,562.86 |
| 3/28/85 | $ 875.68 | $30,766.06 |
| 4/29/85 | $ 875.68 | $ 8,856.30 |

| | | |
|---|---|---|
| 5/08/85 | $ 2,000.00 | $ 3,891.81 |
| 5/28/85 | $ 875.68 | $ 1,791.81 |
| 7/02/8 | $ 875.68 | $ 2,087.40 |
| 7/30/85 | $ 875.68 | $ 2,733.47 |
| 12/13/85 | $ 500.00 | $ 559.42 |
| 12/20/85 | $ 500.00 | $ 59.62 |
| 1/14/86 | $ 600.00 | $ 59.62 |
| 1/28/86 | $ 2,000.00 | $ 59.62 |
| 3/20/86 | $ 1,000.00 | $ 467.53 |
| 3/21/86 | $ 5,000.00 | $ 1,267.53 |
| 4/30/86 | $ 300.00 | $ 1,306.44 |
| 7/29/87 | $10,000.00 | $ 6,316.01 |
| 8/12/87 | $ 1,000.00 | $ 323.42 |
| 9/24/87 | $ 1,400.00 | $ 324.73 |
| 10/15/87 | $ 2,400.00 | $ 320.05 |
| 11/09/87 | $ 1,200.00 | $ 306.73 |
| 12/08/87 | $ 5,000.00 | $ 294.27 |
| 1/06/88 | $ 1,000.00 | $ 283.65 |
| 1/14/88 | $ 3,790.00 | $ 274.65 |
| 2/01/88 | $ 3,600.00 | $ 274.65 |
| 3/07/88 | $ 2,000.00 | $ 255.85 |
| 3/24/88 | $ 2,000.00 | $ 246.85 |
| 4/07/88 | $ 2,000.00 | $ 233.02 |
| 4/18/88 | $ 1,150.00 | $ 224.02 |
| 5/04/88 | $ 1,000.00 | $ 209.93 |
| 5/23/88 | $ 100.00 | $ 200.93 |
| TOTAL | $58,973.30 | |

(24) On many occasions, the above deposits were made in order to raise the account balance to a point where a check to [A] could be honored.

(25) In addition, the following deposit was made into the [A] account:

| DATE | AMOUNT | SOURCE OF DEPOSIT |
|------|--------|-------------------|
| 6/09/86 | $32,009.20 | Proceeds from redemption of Certificate V66915 (opened 11/28/83). |

(26) By letter dated April 8, 1988, [A] advised respondent that she was terminating his services as her attorney and that he was "to release *all* of [A] and [F's] money to us immediately."

(27) On or about April 18, 1988, [O] respondent's office administrator, telephoned [A], at which time [O] advised:

(a) Respondent had received [A's] letter of discharge; and

(b) It would take "one to two weeks" to gather the money together.

(28) By letter dated May 13, 1988, [P], Esquire, wrote to respondent and informed him that:

(a) he had been retained by [A];

(b) Respondent was to render a total accounting of the [A] funds, including all receipts and records; and

(c) Respondent should contact [P] if it would take him more than 15 days to complete the accounting.

(29) By letter dated May 27, 1988, [O] informed attorney [P] that a full accounting would be provided within two weeks.

(30) By letter dated June 13, 1988, [O] wrote to attorney [P], confirming a previous telephone conversation in which [O] advised attorney [P] that "[A] had exceeded her portion of her late husband's medical malpractice proceeds."

(31) By letter dated June 28, 1988, respondent forwarded to attorney [P] various documents with regard to the [A] money, including bank records, various correspondence and a "C.P.A.'s analysis."

(32) Subsequently, respondent wrote to attorney [P] and advised that he believed that the money due and owing to [F] should be placed into an account annotated in accordance with the August 18, 1983, order of court.

(33) The following accounts were opened by respondent on behalf of the [A] in order to repay the balance of the funds due them:

(a) [Q] Bank of [    ] Pennsylvania, account number [    ], opened on July 7, 1988, and captioned [F], a minor and [A], his parent and natural guardian, with a restriction that no withdrawal was to be made without court order:

| DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
| --- | --- |
| July 7, 1988 | $10,000.00 |
| July 11, 1988 | $30,000.00 |
| July 13, 1988 | $24,339.84 |
| July 14, 1988 | $10,660.16 |
| July 26, 1988 | $10,000.00 |

(b) [R] Savings Association, account number [    ], opened on July 14, 1988, and captioned [A], custodian for [F], with restriction that [F] was not permitted to act on the account until the age of 18 years:

| DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
| --- | --- |
| July 14, 1988 | $16,174.33 |
| July 27, 1988 | $10,625.67 |
| August 31, 1988 | $58,200.00 |

(c) [S] Bank and Trust, account number [    ], opened on September 2, 1988, and captioned [F] by [A], guardian:

| DATE OF DEPOSIT | AMOUNT OF DEPOSIT |
|---|---|
| September 2, 1988 | $14,327.25 |
| September 2, 1988 | $17,653.83 |
| September 12, 1988 | $ 3,064.97 |

(reflects payment of the principal and interest of [I] and [J] loan to [A], made to [F's] account to offset the amount that [A] owed to that account.)

| September 26, 1988 | $ 3,894.19 |
|---|---|

(reflects payment of the principal and interest of the [K] loan to [A], made into [F's] account to offset the amount that [A] owed that account.)

| October 6, 1988 | $ 2,859.28 |
|---|---|
| October 17, 1988 | $ 800.16 |

(reflects the closing out of the [A] account at [G], account number [ ], including $166.39 interest.)

(34) In addition, respondent paid the fees of attorney [P] and the accountant retained by [P].

(35) Petitioner has alleged that respondent, by reason of the aforementioned conduct, has violated the following Disciplinary and Professional Conduct Rules:

(a) D.R. 1-102(A)(4)—dealing with a lawyer engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 1-102(A)(5)—dealing with a lawyer engaging in conduct that is prejudicial to the administration of justice;

(c) D.R. 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law;

(d) D.R. 6-102(A)—prohibiting an attorney from attempting to exonerate himself from or limiting his liability to his client for his personal malpractice;

(e) D.R. 7-106(A)—prohibiting an attorney from disregarding a ruling of a tribunal made in the course of a proceeding; and

(f) RPC 1.15(b)—requiring a lawyer to promptly deliver to a client or third person funds that the client or third person is entitled to receive and, upon request by the client or third person, promptly render a full accounting regarding such property.

## CONCLUSIONS OF LAW

Respondent, by virtue of his previously described conduct, has violated the following Disciplinary and Professional Conduct Rules:

(1) Respondent violated D.R. 1-102(A)(5) and D.R. 7-106(A) when he failed to place [F's] funds in a restricted segregated account as ordered by the court on August 18, 1983, and when he withdrew [F's] money from the bank for the purpose of making various loans which had not been authorized by the court.

(2) Disciplinary Rule 1-102(A)(6) was violated by respondent when he failed to secure the loans and protect the interests of the [A] when he loaned their money to [K] and [I].

(3) In addition, respondent violated D.R. 6-102(A) when he improperly attempted to exonerate himself from malpractice liability by including a clause in the power of attorney signed by [A] which held him "harmless" for any and all actions carried out pursuant to the power and indemnified him from all actions related to the power.

## DISCUSSION

There are two issues immediately before the Disciplinary Board. The first question is whether respondent has engaged in professional misconduct. The second query, assuming that respondent has in fact acted in an unprofessional manner, is what type of discipline is appropriate in the instant matter.

We note from the outset that petitioner bears the burden of proving respondent's professional misconduct. The preponderance of the evidence must demonstrate misconduct in a way that is clear and satisfactory. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The petition for discipline, as well as petitioner's brief, alleged that respondent improperly handled the settlement proceeds of [A] and [F] and attempted to exonerate himself for any potential mismanagement of these funds. We will consider each charge raised by petitioner.

The Office of Disciplinary Counsel has alleged that respondent engaged in dishonest, fraudulent or deceitful conduct or misrepresentation, in violation of D.R. 1-102(A)(4). In the September 11, 1991, brief opposing respondent's exceptions, petitioner contended that respondent violated D.R. 1-102(A)(4) when he failed to comply with the August 18, 1983, court order directing that [F's] funds remain inviolate unless the court has granted permission for an expenditure to be made and withdrew some money from the account. Petitioner does not argue with respondent's admission that he failed to read the court order, which he had signed in his position as co-counsel, but rather insists that Pennsylvania civil law concerning the liability of one who signs a document without reading it should dictate whether an attorney has violated

D.R. 1-102(A)(4) by neglecting to read a court order his conduct subsequently violated.

"The primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system." *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180, 1186 (1987). Furthermore, "disciplinary sanctions are not primarily designed for their punitive effects." *Stern,* 526 A.2d at 1185. Bearing these thoughts in mind, it is our conclusion that a civil standard of liability is no substitution for a literal reading of the Disciplinary Rules themselves. Disciplinary Rule 1-102(A)(4) is violated when an attorney engages in some form of dishonest conduct or misrepresentation. It is our conclusion that in the instant matter respondent lacked the requisite knowledge or intent to engage in deceitful conduct when he invested money on behalf of a minor whose mother had granted him extensive access to the funds. We are not condoning respondent's irresponsible conduct however, we are refusing to find that such actions rise to the level of misconduct proscribed by D.R. 1-102(A)(4).

Similarly, we decline to find, as urged by petitioner, that respondent violated D.R. 1-102(A)(4) when he failed to secure [A's] interest in a loan to himself. It is petitioner's position that because respondent failed to file the note he gave [A] or to file a mortgage against the property he had offered as collateral for the debt, his conduct violated D.R. 1-102(A)(4). Again, we conclude that respondent acted in a less than exemplary fashion, but fail to find that a preponderance of the evidence clearly and satisfactorily proved dishonest conduct or misrepresentation.

The Office of Disciplinary Counsel charged that respondent violated D.R. 1-102(A)(5) and D.R. 7-106(A) when he mishandled [F's] funds by failing to place them

in a restricted segregated account and withdrawing them without court permission, as ordered on August 18, 1983. It is clear that respondent's admitted failure to keep [F's] money in a separate account; and his subsequent withdrawal of such funds in violation of the court order, constitutes conduct which is prejudicial to the administration of justice and disregards a ruling of a tribunal made in the course of a proceeding. Respondent had an obligation to keep the entrusted funds separate, and to manage them in compliance with any related court orders. Failure to fulfill these duties resulted in violation of D.R. 1-102(A)(5) and D.R. 7-106(A).

The Office of Disciplinary Counsel also charged respondent with violating D.R. 1-102(A)(6). The allegation that respondent's conduct adversely reflected on his fitness to practice law is substantiated by his failure to secure the notes to [K] and [I] after he had loaned the [A] money to them. Respondent's failure to safeguard the [A's] money was both irresponsible and potentially dangerous since it could have led to severe problems had the recipients of the funds proven careless.

The petition for discipline also alleged that respondent violated D.R. 6-102(A) when he had [A] sign a power of attorney whose terms exonerated him from any liability for matters related to his handling of the [A] funds. Clearly the use of such an exculpatory clause is precisely the type of conduct proscribed by D.R. 6-102(A). Respondent's use of this exculpatory clause, therefore, violated D.R. 6-102(A).

Finally, respondent was charged with violating RPC 1.15(b) which requires a lawyer to promptly deliver client funds and provide a full accounting for such property.

As with the allegation respondent violated D.R. 1-102(A)(4), petitioner has failed to sustain the burden of proving, by clear and satisfactory evidence, that such a transgression occurred. In fact, respondent took prompt action to secure the funds for the [A] after [A's] April 8, 1988, request for her property, and retained an accountant so that a proper accounting could be provided. Therefore, his conduct was not in violation of RPC 1.15(b).

Having decided that respondent's conduct violated four of the six Rules as charged by petitioner, our next task is the determination of appropriate discipline. As always, the Disciplinary Board recognizes that the proper measure of discipline will protect both the interests of the public and the integrity of the bar. *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180, 1187 (1987).

Although respondent has violated four Disciplinary Rules, we note that his misconduct was not so egregious as to pose a serious threat to the interests of the public or the bar. Such a conclusion does not ignore the seriousness of his misconduct but rather recognizes that various facts surrounding the case must be considered when imposing discipline.

The gravamen of the complaint against respondent is that he failed to adequately protect the interests of the [A] after agreeing to manage their settlement proceeds, and attempted to exonerate himself from liability should he mishandle the money. Although this conduct was certainly unprofessional, we are convinced respondent was motivated in part by his fears about [A's] stability, since she had admitted her alcoholism and her boyfriend's cocaine addiction to respondent. Although as an attorney respondent had to provide the same representation to all

clients, he was afraid that [A's] personal problems would have led her to perhaps wrongfully accuse respondent of malpractice. We make reference to this fact only to buttress our conclusion that respondent's unprofessional conduct was an aberration and based on his, albeit incorrect, perception of the situation, not motivated by a desire to harm the [A]. Although a less sinister motive for professional misconduct in no way mitigates Disciplinary Rule violations, it is an appropriate factor to consider at the dispositional stage of disciplinary proceeding.

Based on these facts, we conclude that the most appropriate discipline for respondent is a public censure. Imposition of a public censure will recognize the severity of respondent's misconduct and protect both the public and the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be subjected to a public censure.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Keller, Eckell, Leonard, Hill and Dr. Gilbert dissent and would recommend a three-month suspension.

Mr. Witherel abstained.

Messrs. Schiller and Paris and Ms. Flaherty did not participate in the adjudication.

## ORDER

And now, August 12, 1992, upon consideration of the report and recommendations of the Disciplinary Board

dated December 12, 1991, the petition for review and answer thereto, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of 18 months, and he shall comply with the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Cappy dissents.